IN RE VALUATION AND EQUALIZATION OF REAL PROPERTY IN THE STATE OF NEBRASKA FOR 1965.
COUNTY OF LANCASTER, APPELLANT, v. STATE BOARD OF EQUALIZATION AND ASSESSMENT OF THE STATE OF NEBRASKA, APPELLEE.
IN RE VALUATION AND EQUALIZATION OF REAL PROPERTY IN THE STATE OF NEBRASKA FOR 1965.
COUNTY OF LANCASTER, APPELLANT, v. STATE BOARD OF EQUALIZATION AND ASSESSMENT OF THE STATE OF NEBRASKA, APPELLEE.
143 N. W. 2d 885

Filed July 1, 1966. Nos. 36186 and 36192.

Paul L. Douglas, William D. Blue, Ronald D. Lahners, Floyd A. Sterns, Walter D. Weaver, and Janice L. Gradwohl, for appellant.

Clarence A. H. Meyer, Attorney General, and Homer G. Hamilton, for appellee.

Kennedy, Holland, DeLacy & Svoboda, Ralph D. Nelson, Vincent D. Brown, and Arlyss E. Brown, amici curiae.

Heard before CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ., and DITTRICK, District Judge.

SMITH, J.

The State Board of Equalization and Assessment ordered appellant Lancaster County and other counties to increase their assessed valuations of real estate for taxation in the year 1965. The lands in all counties having been classified rural or urban, adjustments of varying percents were ordered to be made horizontally in respect to one or both classes at the county level for the purpose of equalization among the counties. According to counsel for Lancaster County, the board ordered the increases without adequate notification of hearing and without referring to the evidence.

The county contends that failure of notification to taxpayers violated due process of law, although we read in appellant's brief that there are 80,000 parcels of real estate in Lancaster County alone. The board notified all counties as section 77-508, R. R. S. 1943, specifically called for, but the county argues that section 84-913, R. S. Supp., 1963, a counterpart of section 8 of the Model State Administrative Procedure Act of 1946, required notification to taxpayers.

The procedure in advance of hearing did not cut the ground from under the board. An explanation of the few precedents thought to lean in the other direction lies in the distinction, occasionally troublesome, between horizontal and vertical adjustments at the county level. See, County of Douglas v. State Board of Equalization & Assessment, 158 Neb. 325, 63 N. W. 2d 449; County of Howard v. State Board of Equalization & Assessment,

158 Neb. 339, 63 N. W. 2d 441. The hyperbole of every landowner participating in a statewide equalization hearing is instructive. "There must be a limit to individual argument in such matters if government is to go on." Bi-Metallic Inv. Co. v. State Board of Equalization of Colorado, 239 U. S. 441, 36 S. Ct. 141, 60 L. Ed. 372. In the absence of a specific statute, notification to taxpayers is unnecessary.

The county argues that the board stated the issues so indefinitely that the order should be reversed. The board notified the county that the assessed valuations on rural and urban real estate were to be increased or decreased. The county at no time moved for a continuance or a specification of proposed adjustments. "* * * the question on review is not the adequacy of the original notice * * * but * * * the fairness of the whole procedure." 1 Davis, Administrative Law Treatise, § 8.04, p. 525. We agree that in advance of hearing the board ought to have notified the affected counties of the proposed adjustments in percents, and our prior decisions to the contrary are disapproved. However, here the insufficiency of notice was nonprejudicial error in view of the absence of timely objection.

We turn to the contention that the board acted without referring to the evidence. After a hearing at which all 93 counties appeared and voluminous evidence was received, Lancaster County was ordered to increase its assessment of rural land 15 percent and of urban land 28 percent. Valuations of one or both classes were increased in 73 percent of the counties, the records showing aggregate assessments in counties which have appealed but not in other counties.

The board considered assessment-sales ratios in percents for each county. The mean and median of rural ratios were 24.73 and 23.91 respectively, and of urban ratios, 28.68 and 27.70 respectively. The board in effect increased the Lancaster rural ratio from 23.32 to 26.82 and its urban ratio from 23.03 to 29.48. The resultant

mean and median of rural ratios are 28.07 and 27.36 respectively, and of urban ratios 28.83 and 28.36 respectively.

Attacks on the ratios for Lancaster County were indirect. The county assessor testified generally that he had not been given sufficient time to examine the supporting data, but no continuance was requested. The county offered no ratio of its own, although it adduced evidence to the effect that it was bearing a fair share of taxes. Its rural adjustment relates closely to the overall adjustment indicated by the means and medians, and we find no data suggesting that this comparison is unreasonable.

The urban adjustment for Lancaster County was not arbitrary. The relationship between its assessment-sales ratio and the mean and median is close enough, although deviates for other counties are unexplained. In a classification of urban ratios by population Lancaster County, which ranks second in population, is fairly close to the line. The ratio for Douglas County, which ranks first, is 29.99. The mean and median of the first 10 ratios ranked by population are 29.39 and 29.16, respectively. Since Lancaster County seeks a decrease in its own adjusted valuations instead of increases elsewhere, on this record the deviates for other counties do not demonstrate arbitrary adjustment of Lancaster County valuations. "* * * substantial compliance with equality and uniformity is all that is required." County of Kimball v. State Board of Equalization & Assessment, *ante* p. 482, 143 N. W. 2d 893.

An argument is made that no ratio should have been considered, although the county failed to show defects prejudicial to it. Cases in which ratios were found unreliable because of biased data or the like are inapposite. In the absence of statute the board may adopt any reasonable method of equalizing. Fromkin v. State, 158 Neb. 377, 63 N. W. 2d 332. We point out that the problem of determining the reasonableness or arbitrari-

ness of the action is complicated by the absence from the record of computations made or used by the board. If the board had shown in the record all computations made or used in reaching its conclusions, the problems of this court would be simplified.

The final decision of the board ordering Lancaster County to increase its valuations is affirmed.

AFFIRMED.

SPENCER, J., dissenting.

I respectfully dissent from the majority opinion because I cannot be a party to a guessing game in a judicial proceeding. To sustain the order of the State Board of Equalization and Assessment required the court to go outside the record, as the opinion itself suggests. There is absolutely nothing in the record to indicate the basis on which the board acted, unless we consider a self-serving resolution adopted at the close of the hearing, which finds no support in the record.

The testimony of the county officials of the appealing counties does not in any manner support the action taken, nor can anything be deduced from the testimony of the officials in the other counties which would serve that purpose. Actually, if the board acted only on the testimony appearing in the record from all sources, its action could not be sustained.

The board adduced testimony on perimeter studies, but it is evident from the record that these studies were given little if any consideration in the decision reached. If they had been considered, the results in many instances would have to be different.

The board makes a finding that the abstracts of assessment do not conform to law. In what way they do not conform is not disclosed, and I confess that if there is any clue to it in this record, I am unable to find it.

It is evident to me that the board, as it stated in the resolution, considered the personal knowledge of each and every member of the State Board of Equalization and Assessment, for its action cannot be explained on

any other basis, and the record itself suggests that the board has the feeling that its own conscience is its only guide as to what it may do. The board seems to draw this conclusion from some loose language appearing in previous cases. I call particular attention, however, to the fact that the dissenting opinion in Carpenter v. State Board of Equalization & Assessment, 178 Neb. 611, 134 N. W. 2d 272, stated: "At this point also, we should state that we disagree wth the holding that the Board is not bound by the record, but may act upon the knowledge of its members as to value and any other information satisfactory to it. If this be the rule, as applied to this case, it would be virtually impossible to successfully contest any action of the Board." In this respect, I point out that in the concurring opinion, the following appears: "I am not prepared to hold, however, that the Board is bound by other than competent evidence." From this it should be apparent that in the last case on the subject, a majority of the court stated that the board could only act on competent evidence. How this court can review a record which does not indicate the evidence on which the board acted, is a mystery to me.

With reference to the sales-assessment ratio, there is no testimony in the record to show how it was computed except for the observation made by an employee of the Tax Commissioner's office that the sales-assessment ratio study is made by averaging total valuation of all the land sold into the total assessed value. The actual sales-assessment figures were not put into the record except by questions asked, and except in only a few instances the sales on which the assessments were allegedly based do not appear in the record.

With reference to the figures used in the specific case of Lancaster County, the record indicates that figures sent by the Tax Commissioner to the county assessor to be checked were unintelligible and had to be returned for correction. When a corrected list, which is not in the record, was furnished to Lancaster County, it was

too late to permit the checking of those figures by the county for the hearing herein.

The mean and median averages referred to in the opinion are not in the record, but were compiled by the writer of the opinion from the figures referred to heretofore, which only appear in questions asked by an employee of the Tax Commissioner's office. There are counties for which no sales-assessment ratio figures are mentioned, and consequently the figures for these counties could not have been considered in arriving at the average or median figures. While in a group this large the absence of a few might not make too much of a difference, it would make some difference.

The first order of the board raised the urban property for Lancaster County 31 percent, but this figure was later corrected by the board because of a clerical error which is not explained in any manner in the record. If other errors exist, it is not possible to check them from the record. I also suggest that some counties with lower urban ratios were not changed, or received a lower increase. For example, Thomas, with 22.12, was not changed; Hayes, with 22.77, was not changed; and Saline, with 22.91, received a 16 percent increase; yet Lancaster, with a higher sales-assessment ratio based on the Tax Commissioner's figures, received a 28 percent increase.

I have come to the definite conclusion that the State Board of Equalization and Assessment is included as an agency subject to the provisions of the Administrative Procedures Act. Sections 84-901 to 84-919, R. S. Supp., 1963. Section 84-901, R. S. Supp., 1963, states that an agency, as used in the act, means each board, commission, department, officer, division, or other administrative office or unit of the state government authorized by law to make rules, except the office of the Adjutant General, the courts, and the Legislature. Section 77-501, R. R. S. 1943, creates a State Board of Equalization and Assessment; and section 77-502, R. R. S. 1943, provides the Tax Commissioner shall be the secretary and as such

shall perform such duties as may devolve on him by law or rules and regulations of the board.

On many occasions, we have determined that the State Board of Equalization and Assessment is an administrative board, and have determined that the sole question on appeal from its final order is ordinarily limited to questions of law *and whether the evidence is sufficient to sustain the order.* The sole question then is whether such order was arbitrarily made. See Laflin v. State Board of Equalization & Assessment, 156 Neb. 427, 56 N. W. 2d 469.

The notice used by the board, which was a blanket notice to every county to appear to show cause why its values should not be increased or decreased, has been specifically approved by this court heretofore. See County of Buffalo v. State Board of Equalization & Assessment, 158 Neb. 353, 63 N. W. 2d 468. However, these decisions were previous to the passage in 1959 of section 84-913, R. S. Supp., 1963, of the Administrative Procedures Act, which requires the board to give notice, stating the specific issues involved. A reading of the record fails to disclose any mention of the issues which the board considered pertinent for the individual counties. In this regard, it should be mentioned that section 77-508, R. R. S. 1943, provides, so far as material herein: "* * * the board *shall issue a notice to the counties which the board deems either undervalued or overvalued,* * * *." (Italics supplied.) A reasonable interpretation of this language to me would indicate that the board is required to tell a county that it considers its property undervalued, so that the county may appear to make proper showing in the specific instances mentioned. It would seem to me that to send out a general notice to appear to show cause why valuations should not be increased or decreased is a subversion of the statute. As I read Chapter 77, R. R. S. 1943, the board is to meet and examine the abstracts which have been returned by the counties, and then after such examination, to call in those counties

where some change is to be made. It is not the intent of the statute that the board issue a general notice to all of the counties for a social or political gathering, and then subsequently examine the abstracts.

Some of the previous decisions of our court have held that the State Board of Equalization and Assessment, in the equalization of property as between counties, is not required to have a formal hearing. See Boyd County v. State Board of Equalization & Assessment, 138 Neb. 896, 296 N. W. 152. These decisions are previous to the 1959 amendment to the Administrative Procedures Act. It is my conviction that the State Board of Equalization and Assessment is now required by the Administrative Procedures Act to have a formal hearing when a change is to be made, and that the board is required to make a record which will substantiate the change made. It must also include findings of facts on which the decision is based. See § 84-915, R. S. Supp., 1963. This fact has been ignored by the majority opinion, although it is properly raised and argued.

I would hold that when the board reviews the abstracts, as required by law, that the action of the board becomes final except as to those counties which are notified of a proposed raising or lowering of their valuation. In the event this procedure is not followed, the board is without authority to act. The counties notified are entitled to the ordinary rules of due process.

How this court can even start a review of a decision of the State Board of Equalization and Assessment unless we are furnished a finding of the basic facts on which the ultimate fact or conclusion is based, is beyond my comprehension. I cannot agree to town meetings or even star chamber proceedings, or to conclusions which depend upon mere whimsey, or, to use the language of one of the board members, the conscience of the board. I cannot be a party to any holding which suggests, by inference or even by inaction, that the board is beyond the law. I consider it my duty as an appellate judge to act

only on the record presented. That record requires reversal herein.

Carter, J., joins in this dissent.