In re Valuation and Equalization of Real Property in the State of Nebraska for 1966.
City of Omaha, Nebraska, appellant, v. State Board of Equalization and Assessment of the State of Nebraska, appellee.
County of Douglas, Nebraska, appellant, v. State Board of Equalization and Assessment of the State of Nebraska, appellee.
150 N. W. 2d 888

Filed May 19, 1967. Nos. 36444, 36451.

Herbert M. Fitle, Frederick A. Brown, Edward M. Stein, Walter J. Matejka, James E. Fellows, Allen L. Morrow, P. D. Spenceri, and Theodore L. Carlson, for appellant City of Omaha.

Donald L. Knowles, Arthur D. O'Leary, James M.

Murphy, and Paul F. Peters, for appellant County of Douglas.

Clarence A. H. Meyer, Attorney General, and Homer G. Hamilton, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ., and WHITE, District Judge.

McCOWN, J.

This is an appeal by Douglas County and the City of Omaha from an order of the State Board of Equalization and Assessment increasing the valuation of suburban residential lands and improvements and all urban lands and improvements 24 percent as shown by the 1966 abstract of assessment for Douglas County.

The State Board of Equalization and Assessment commenced its public hearings on assessed valuations among the 93 counties of the state on July 26, 1966. Douglas County was notified on July 20 to appear on July 30 for hearing on its assessed valuations. This notice proposed a decrease of 14 percent in the valuation of "urban-suburban property." At the hearing on July 30, an assessment-sales ratio study of Douglas County prepared by the Tax Commissioner's office was the foundation for the proposed 14 percent decrease. This study included 763 sales selected from a group of 3,977 confidential sales reports. Douglas County objected to the inclusion of 153 of these 763 sales and subsequently the State Board sustained objections to 117 of them. This first hearing was continued at the Tax Commissioner's request until August 4. On August 4, Douglas County and representatives of the City of Omaha and the University of Omaha also appeared. At this hearing, the Tax Commissioner's office had made additional computations, eliminating some or all of the sales previously objected to. These additional computations indicated that the proposed reduction should be between 8.72 percent and 7.07 percent, and the Tax Commis-

sioner recommended action accordingly. The hearing on August 4 was concluded with the statement that "this will close the hearing then on Douglas County." Douglas County in both the first two hearings objected to any reduction in its assessments.

Thereafter, apparently on August 10, the Tax Commissioner obtained 1,346 additional confidential sales report forms from Douglas County. Sales involved were for September through December 1965. The Douglas County assessor's office was still working on these forms and the work had not been completed. These 1,346 reports were all processed in one day on August 11 by the Tax Commissioner's office, and 1,107 of them were selected and used in computing a new assessment-sales ratio for Douglas County which was found to be 28.14 percent. This assessment-sales ratio was computed on the aggregate basis by a composite of all classes of property, and was interpreted to indicate that a 24.378 percent increase in urban and suburban property should be ordered rather than any reduction.

On Friday afternoon, August 12, Douglas County was notified to appear for a hearing at 8 a.m. the next morning, August 13, on a proposed 24 percent increase for urban-suburban property. Douglas County appeared at the hearing, objected strenuously on the ground of lack of due process; objected to the introduction of the new study; and also requested an opportunity and time to examine and check the study and the sales and information on which it was built. Apparently on the ground that the statutory time limit for State Board action would expire in 2 more days, and that such time was insufficient to permit the county to check and analyze the study, the objections were overruled, the study was admitted into evidence, and the hearing concluded. Two days thereafter, on August 15, the order was entered imposing a 24 percent increase on urban and suburban property in Douglas County.

Notice of hearing issued by the State Board should

specify the proposed adjustment in percentage amounts. County of Lancaster v. State Board of Equalization & Assessment, 180 Neb. 497, 143 N. W. 2d 885.

The statutory 5-day notice of hearing specifying a proposed 14 percent decrease had been given for the July 30th hearing, and was not required to be repeated for a continuation of that hearing. Nevertheless, a county is entitled to reasonable notice and hearing when a proposed decrease in valuation suddenly becomes a substantial increase, and the entire thrust of the hearing reverses direction after the original hearing has apparently been concluded. The imminence of a statutory deadline for board action does not make the requirements of due process disappear. Under the circumstances here, an overnight notice, and a hearing based on new evidence which the county has no reasonable opportunity to challenge or even to examine, does not meet the requirements of due process.

The record here shows that the foundation for the State Board's equalization order was an assessment-sales ratio in more than a third of the counties; scientific appraisals in some counties; and was indefinite in other counties. The record does not reveal the basis of correlation, or the basis of application, of the methods used for measuring and testing uniformity. There is also no showing in the record of correlation of an assessment-sales ratio study in Douglas County based on 1965 assessments to the 1966 abstract of assessment. The evidence does show that Douglas County made substantial increases in assessed values between 1965 and 1966 in certain classes of property, but the 1965 assessment-sales ratio was applied to the 1966 abstract of assessment apparently without examining the abstract. Even a thoroughly reliable assessment-sales ratio study based on a prior assessment period needs to be correlated to a subsequent abstract of assessment where there are substantial changes in assessment valuation in the abstract to which the study is being applied.

. The State Board has a wide latitude of judgment and discretion in equalizing assessment of property. That judgment and discretion is not unlimited, but if its exercise is to be properly presented for judicial review, at a minimum, the evidence upon which the State Board relied and the method by which it reached the determinations made must be shown. Compare, County of Blaine v. State Board of Equalization & Assessment, 180 Neb. 471, 143 N. W. 2d 880; County of Box Butte v. State Board of Equalization & Assessment, 180 Neb. 492, 143 N. W. 2d 900; County of Lancaster v. State Board of Equalization & Assessment, *post*, p. 738, 150 N. W. 2d 886.

Neither mathematical exactness nor precise uniformity is possible in the complex task of equalization. Substantial compliance with the requirements of equality and uniformity is all that is required.

Upon consideration of the entire record here, however, we cannot escape the conclusion that the order of the State Board of Equalization and Assessment as applied to Douglas County was arbitrary and capricious and must be reversed.

REVERSED.