606 N.W.2d 786 (2000)
258 Neb. 866
CONSTRUCTORS, INC., et al., appellants,
v.
CASS COUNTY BOARD OF EQUALIZATION and Nebraska Tax Equalization and Review Commission, appellees.
Nos. S-99-163 through S-99-180.
Supreme Court of Nebraska.
February 26, 2000.
*789 James W. Hewitt, Lincoln, for appellants.
Charles E. Dorwart, of James R. Brown, P.C., Papillion, for appellee Cass County Board of Equalization.
HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
GERRARD, J.

NATURE OF CASE
Constructors, Inc.; Ken Lauritzen; Doris R. Tiedeman; and Kerford Limestone Company are all landowners in Cass County. In 1998, their respective properties were assessed at a higher value because of mineral interests lying beneath their land, and consequently, their property taxes increased. This was the first time their mineral interests were separately assessed and valued for tax purposes. The parties protested this increase with the Cass County Board of Equalization (Board), which affirmed the assessment. They then appealed the Board's decision to the Nebraska Tax Equalization and Review Commission (TERC). TERC affirmed the decision of the Board by dismissing the appeal as a matter of law. Constructors, Inc.; Lauritzen; Tiedeman; and Kerford Limestone then filed petitions for appellate review pursuant to Neb.Rev. Stat. § 77-5019 (Cum.Supp.1998). Their appeals were consolidated, and as they are similarly situated for purposes of this appeal, they will be referred to collectively as "the appellants."
The question with which we are presented is whether the increased value and the resulting higher tax on the appellants' properties because of the mineral interests lying beneath their land violate the uniformity clause of article VIII, § 1, of the Nebraska Constitution in that there are other Cass County property owners with mineral interests lying beneath their land that were not assessed a higher tax. We answer in the affirmative and, therefore, reverse TERC's order of dismissal and remand this cause for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND
In 1997, the Cass County assessor, Veda Copenhaver, decided to begin the process of appraising properties with possible mineral value in Cass County. She hired an appraisal company, Iowa Appraisal and Research Corporation. Its employee, Patrick Schulte, appraised several parcels of Cass County land. Copenhaver told Schulte that there were several properties on which she had seen evidence of sales and use, causing her to suspect that they were not assessed at market value and that she needed an appraisal done on those properties to bring them up to market value. Schulte's primary assignment was to appraise all mineral interests of value in Cass County.
Copenhaver gave Schulte a list of 84 properties to appraise. Schulte appraised additional properties which he discovered were owned or leased by mining companies *790 or properties that had been previously mined. He determined that approximately 62 properties that he inspected did not have any increased value from subsurface mineral rights. Schulte submitted reports to Copenhaver regarding the appellants' properties in which the mineral reserves were valued separately from the land. These landowners were sent two statements, one for the surface rights and the other for the mineral interest(s). In explaining his appraisal, Schulte testified that the properties with increased value were deemed so because they were situated near one of the ledges or reserves of limestone that could possibly be productive within 30 years.
The only landowners in Cass County who received additional mineral interest notices were mining companies or those who had property under lease to the mining companies. These landowners include the appellants because Constructors, Inc., and Kerford Limestone are mining companies; Lauritzen leased his property to Kerford Limestone; and Tiedeman sold her property to Kerford Limestone in an unrecorded sale. Although under the mining companies' control, the subject land was not being currently mined at the time of the appraisal; rather, it was being farmed. However, Copenhaver testified that the fact that these properties received an increased value was not because of the mining companies' control, but, rather, because the past sales and use of the property justified an increased value.
It is undisputed that there are other properties in Cass County with subsurface mineral interests that did not receive tax statements for their minerals. The appellants' expert witness, Raymond Burchett, a geologist, testified that there was limestone with commercial value in nearby land other than that of the appellants. Cass County maintained, however, that the mineral interests in these other properties had no commercial value and that the presence of these minerals would not increase the overall value of the land. Upon examination by the commissioners and on recross-examination, Burchett admitted that he did not know if it was economically feasible to extract the minerals. However, Burchett also testified on redirect examination that these other mineral interests would have significant commercial value if the existing mines were extended into those other parcels of property.
The appellants filed a tax property valuation protest. In their protest, the appellants claimed:
The mineral interests in this land are not to be separately valued because the fee and the mineral interests have not been severed. They should be calculated as part of the total market value of the land. Further, all taxpayers in Cass County have not been treated uniformly. Many with minerals under their land did not receive a separate valuation.
The Board affirmed the decision of the assessor. The appellants then appealed to TERC, which affirmed the decision of the Board by dismissing the appeal as a matter of law. In its decision, TERC stated that "although the tax is a single and indivisible tax, the components of the real estate may be assessed separately" and that "no evidence has been adduced to establish that the valuation of mineral interests within Cass County for tax year 1998 was the result of a `... deliberate and intentional discrimination systematically applied....'"
The appellants filed a petition for review, pursuant to § 77-5019, in the Nebraska Court of Appeals. These appeals were consolidated, and the appellants' motion to bypass the Court of Appeals was granted.

ASSIGNMENTS OF ERROR
The appellants allege that TERC erred (1) by affirming the assessments of the appellants' property because the assessments violate the constitutional command that property within the same classification is to be valued uniformly and proportionately, *791 (2) by sanctioning the procedure by which Cass County assessed the mineral interests because the mineral interests should not have been assessed separately as they had not been severed from the surface estate, (3) by holding that the assessments of the appellants' property were not arbitrary and unreasonable and were based on credible evidence, (4) by erroneously applying the presumption that the Board faithfully performed its duties, and (5) in affirming the assessments because such affirmation denies the appellants equal protection of the law under the Nebraska Constitution, as similarly situated property owners have been treated differently and there is no rational justification for this disparate treatment.

STANDARD OF REVIEW
Section 77-5019(5) provides that appellate review of a TERC decision shall be conducted for error on the record. When reviewing an order for errors appearing on the record, the appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. Pittman v. Sarpy Cty. Bd. of Equal., 258 Neb. 390, 603 N.W.2d 447 (1999). However, in instances where we are required to review cases for error appearing in the record, questions of law are nonetheless reviewed de novo on the record. County of Adams v. State Bd. of Equal., 247 Neb. 179, 525 N.W.2d 629 (1995).
There is a presumption that a county board of equalization has faithfully performed its official duties in making an assessment and has acted upon sufficient competent evidence to justify its action. That presumption remains until there is competent evidence to the contrary presented, and the presumption disappears when there is competent evidence adduced on appeal to the contrary. From that point forward, the reasonableness of the valuation fixed by the board of equalization becomes one of fact based upon all the evidence presented. The burden of showing such valuation to be unreasonable rests upon the taxpayer on appeal from the action of the board. US Ecology v. Boyd County Bd. of Equal., 256 Neb. 7, 588 N.W.2d 575 (1999).

ANALYSIS

PRESUMPTION
The threshold hurdle that the appellants must overcome is the presumption that the Board faithfully performed its official duties in making an assessment and acted upon sufficient competent evidence to justify its action. Id. In its findings in the case at bar, TERC determined that there was no evidence presented which (1) established that "the value of the land, improvements, and mineral interests of the subject property as determined by the County, taken as a whole, exceeds market value"; (2) "establish[ed] that the valuation of mineral interests within Cass County for tax year 1998 was the result of a `... deliberate and intentional discrimination systematically applied'"; and (3) "establish[ed] that the decision of the County was unreasonable or arbitrary."
The appellants argue that TERC committed patent error on the record in finding that there was no evidence of the unreasonableness of Cass County's action. We agree. Clearly, there was some evidence which called into question the reasonableness of the action, especially the admission that there were other Cass County properties with mineral interests which were not valued.
In Copenhaver's and Schulte's testimony regarding the valuation scheme, both suggested that no other land (besides appellants') had added value from the minerals. Schulte, however, testified that he did not appraise the property held by others which was immediately west of the Kerford Limestone holdings and admitted that there is probably limestone under the surface. Copenhaver testified that the increased value due to the minerals was not *792 really related to the mining companies' control, but, in fact, it is apparent that Schulte saw a direct relation in that he stopped appraising the land west of the Kerford Limestone holdings. Further, Burchett testified that there was limestone with commercial value in nearby land other than that of the appellants. The cumulative effect of this evidence overcame the presumption favoring the Board.
Thus, the reasonableness of the valuation fixed by the Board becomes one of fact based upon all the evidence presented. The burden of showing such valuation to be unreasonable rests upon the appellants. US Ecology v. Boyd County Bd. of Equal., 256 Neb. 7, 588 N.W.2d 575 (1999). With the foregoing principles in mind, we address the appellants' claims regarding the lawfulness of the valuation scheme.

UNIFORMITY CLAUSE
There is no question an assessor may take into account the value of minerals contained within the land when assessing it: "Mineral interests, either producing or nonproducing, are real property and shall be valued for taxation as any other real property whether or not such mineral interests are severed from the surface interests." 316 Neb. Admin. Code, ch. 47, § 002.01 (1993) (readopted July 2, 1999; current version at 350 Neb. Admin. Code, ch. 13, § 002.01 (1999)).
However, in valuing the land, the uniformity clause of the Nebraska Constitution, article VIII, § 1, sets the parameters, and that clause provides in part, "(1) Taxes shall be levied by valuation uniformly and proportionately upon all real property and franchises as defined by the Legislature except as otherwise provided in or permitted by this Constitution."
Several principles of uniformity clause jurisprudence guide our analysis. Initially, we note that while absolute uniformity of approach for taxation may not be possible, there must be a reasonable attempt at uniformity. County of Sarpy v. State Board of Equalization & Assessment, 185 Neb. 760, 178 N.W.2d 765 (1970). The object of the uniformity clause is accomplished "if all of the property within the taxing jurisdiction is assessed and taxed at a uniform standard of value." County of Gage v. State Board of Equalization & Assessment, 185 Neb. 749, 755, 178 N.W.2d 759, 764 (1970). Taxpayers are entitled to have their property assessed uniformly and proportionately, even though the result may be that it is assessed at less than the actual value. Equitable Life v. Lincoln County Bd. of Equal., 229 Neb. 60, 425 N.W.2d 320 (1988); Fremont Plaza v. Dodge County Bd. of Equal., 225 Neb. 303, 405 N.W.2d 555 (1987). The constitutional requirement of uniformity in taxation extends to both rate and valuation. First Nat. Bank & Trust Co. v. County of Lancaster, 177 Neb. 390, 128 N.W.2d 820 (1964). In the instant case, the appellants are contesting the valuation method applied in that the mineral interests in their property were valued, whereas other similarly situated property owners' interests were not valued.
We note that a tax statute is not at issue here; rather, it is the assessor's and the Board's decisions which are being scrutinized. Nonetheless, our uniformity clause analysis remains the same. The rules as to uniformity and equal protection of the laws apply not only to acts of the legislative department but also to the valuation by the assessing officers. Discrimination in valuation, where it exists, does not necessarily result from the terms of the tax statute, but may be caused by the acts of the taxing officer or officers. See 1 Thomas M. Cooley, The Law of Taxation § 302 (4th ed.1924).
The appellants argue that the uniformity clause has been violated because they have been taxed on the mineral interests beneath their property in Cass County when other similarly situated landowners have not been taxed on minerals *793 beneath their respective properties. The appellants assert that in effect, the assessor created two subclasses of agricultural land by implementing the valuation scheme: (1) land controlled by someone who does not operate mining operations elsewhere in Cass County and (2) land controlled by the appellants, who own or have entered some type of agreement with companies who operate mining operations elsewhere in Cass County. We agree and determine that such a classification scheme does, in fact, violate the uniformity clause.
There can be no difference in the method of determining the valuation or rate of tax to be imposed unless separate classifications rest on some reason of public policy or some substantial difference of situation or circumstance that would naturally suggest justice or expediency of diverse legislation with respect to the objects to be classified. State ex rel. Meyer v. McNeil, 185 Neb. 586, 177 N.W.2d 596 (1970). In State ex rel. Meyer, we held that a statute which created a separate taxation class for agricultural income-producing machinery and equipment apart from all other tangible property violated the uniformity clause. We noted that although reasonable classifications are permissible,
the classification must rest on real differences of situation and circumstances surrounding the members of the class, relevant to the subject of legislation, which render appropriate its enactment.... But the establishment of two methods of valuation of property in the same class for taxation purposes results in a want of uniformity within the constitutional prohibition of Article VIII, section 1.
State ex rel. Meyer, 185 Neb. at 588, 177 N.W.2d at 598. We stated that the classification did not rest on public policy reasons or on a substantial difference of situation or circumstance and concluded: "It is therefore an attempt to create a classification within a classification without any reasonable grounds for so doing other than to secure advantages for those falling within the purview of the act. It is violative of the uniformity provisions of Article VIII, section 1, of the Constitution." State ex rel. Meyer, 185 Neb. at 589-90, 177 N.W.2d at 599.
Similarly, in the case at bar, the classification scheme created by the selective valuation of mineral interests in Cass County must rest on a substantial difference of situation between the appellants and others whose minerals were attributed to have no value. The record reveals no substantial difference, and therefore, we must conclude that there is no substantial difference or public policy reason that justifies differential tax treatment between farmland controlled by mining companies and similar farmland not controlled by mining companies. Thus, the classification scheme created in which only those minerals contained in lands owned by the appellants were given value for tax purposes, whereas other mineral interests were ignored, violates the uniformity provisions of article VIII, § 1, of the Nebraska Constitution.
In Warner v. Board of Equalization, 214 Neb. 730, 335 N.W.2d 556 (1983), we struck down a classification scheme as violative of the uniformity clause. The assessor in Warner created a classification system in which 1-acre tracts were valued at $2,000; 2- to 5-acre tracts were valued at $1,500 per acre; 6- to 10-acre tracts were valued at $1,000 per acre; 11- to 20-acre tracts were valued at $850 per acre; and land holdings of 21 acres or more were valued at $80 per acre. The taxpayer in Warner possessed an almost 15-acre lot, so his property was valued at $850 per acre, although similar property down the road was valued at $80 per acre. This court determined that this system violated the uniformity clause:
Real property taxes may not be equalized by merely classifying property and then arbitrarily applying a given value to all properties of that classification.... *794 The mere fact that a formula is devised, by which property is nonuniformly and disproportionately assessed, does not satisfy the constitutional requirement.... [The assessor and the Board of Equalization], in assessing Warner's property at $850 an acre acted arbitrarily and capriciously. The action of the trial court in reducing the value to $80 an acre was proper.
Id. at 733-34, 335 N.W.2d at 557-58. We see no reason to apply a different rationale to the instant case.
Property of the same character must be taxed the same. Differential tax treatment can only be based on the use or nature of the property, not upon who controls the property, i.e., mining companies versus farmers. Schulte testified that there were other lands with limestone interests, but he stopped attributing value to these interests beyond the Kerford Limestone property holdings. Thus, the adjacent landowners escaped the increased tax that burdened their neighbor, even though both are similarly situated as property owners with subsurface mineral interests. A heavier tax burden on the appellants, who own farmland with subsurface mineral interests, like others in Cass County, cannot be justified merely by the fact that the appellants or their lessees own other property upon which mining is conducted. To allow such a valuation scheme to withstand scrutiny would defeat the purpose of the uniformity clause: to assess and tax at a uniform standard of value all the property within a taxing jurisdiction. County of Gage v. State Board of Equalization & Assessment, 185 Neb. 749, 178 N.W.2d 759 (1970). Under the circumstances of this case, the valuation system used by Cass County, which effectively is a de facto ownership classification, violates the uniformity clause. Because we have concluded that the valuation scheme employed in the instant case violates the uniformity clause, we need not address the other assignments of error.

CONCLUSION
For the foregoing reasons, we reverse the order of dismissal by TERC, and remand this cause to TERC for further proceedings regarding the 1998 tax year, consistent with this opinion and in conformity with Neb.Rev.Stat. § 77-5017 (Reissue 1996).
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.