IN RE VALUATION AND EQUALIZATION OF REAL PROPERTY
IN THE STATE OF NEBRASKA FOR 1965.
COUNTY OF KIMBALL, APPELLANT, V. STATE BOARD OF
EQUALIZATION AND ASSESSMENT OF THE STATE OF
NEBRASKA, APPELLEE.

143 N. W. 2d 893

Filed July 1, 1966.   No. 36177.

Thomas D. Brower, for appellant.

Clarence A. H. Meyer, Attorney General, and Homer G. Hamilton, for appellee.

Kennedy, Holland, DeLacy & Svoboda, amicus curiae.

Heard before CARTER, SPENCER, BOSLAUGH, SMITH, and McCOWN, JJ., and DITTRICK, District Judge.

BOSLAUGH, J.

This is an appeal by Kimball County, Nebraska, from the order of the State Board of Equalization and Assessment increasing the valuation of both urban and rural land and improvements as shown by the 1965 abstract of assessment for Kimball County.

In its reply brief, the county contends that the proceedings of the state board were void because of its failure to comply with the provisions of the Administrative Procedures Act, sections 84-901 and 84-909 to 84-919, R. S. Supp., 1963. The objection is raised for the first time in this court. Kimball County appeared before

the board and participated in the hearing without objecting to the notice or the procedure of the board.

In County of Blaine v. State Board of Equalization & Assessment, *ante* p. 471, 143 N. W. 2d 880, we held that there are practical difficulties which prevent a strict and literal application of the Administrative Procedures Act to the proceedings of the state board where the board is attempting to equalize the valuation of real estate in all 93 counties. Upon an appeal to this court from the State Board of Equalization and Assessment, the issue is whether the record of the proceedings before the board shows that the order was unreasonable and arbitrary. If the record demonstrates that the order of the board was arbitrary, it will be reversed. Fromkin v. State, 158 Neb. 377, 63 N. W. 2d 332.

The county contends that the order of the state board increasing the valuation of both urban and rural property was arbitrary and capricious. The order of the state board directed that the valuation of urban property in Kimball County, as reflected by the 1965 abstract of assessment, be increased 7 percent, and that rural property be increased 29 percent.

The testimony with respect to Kimball County shows that Kimball County was reappraised in 1957; that the county board reduced the value of rural lands 20 percent from the appraised values; that until a year ago, professional appraisers were employed to keep the appraisals up to date; that an employee of the county, who was trained by the appraisal company, now does this work; that the land around the city of Kimball was revalued 2 years ago; that the land in Cheyenne County along the county line is assessed somewhat higher than the land in Kimball County; that the land in. Kimball County along the Banner County line is assessed higher than the land in Banner County; that the difference in assessed value is due to the difference in the quality and type of land; that the sales-assessment ratio for Kimball County is 21.21 for rural and 27.01 for urban; and that

most sales of rural property are of tracts which are purchased as additions to operating units.

The testimony does not show how the sales-assessment ratio which appears in the record was computed. The county objected to some of the sales, and it is not clear whether these sales were used in computing the ratio. Upon this state of the record, we must assume that the ratio was computed accurately and that the sales used were representative.

The evidence relating to the sales-assessment ratio indicates that some increase in the value of rural property should have been made. The increase which was made brought the sales-assessment ratio for rural property in Kimball County to 27.36, which appears to be the median for all counties as adjusted by the state board.

Much of the county's brief is devoted to a comparison of the valuation of Cheyenne County land with that in Kimball County. The sales-assessment ratio for Cheyenne County, as shown by the record, is 31.83 for rural.

The county argues that any increase in the valuation of rural property should have been restricted to land and that no increase should have been made in the value of improvements. The argument assumes that the state board could not do more than restore the 20 percent reduction in the value of rural land which was made at the time of the 1957 reappraisal. The justification for the 1965 increase, that may be found in the record, is the sales-assessment ratio. Equalization based upon a comparison of sales-assessment ratios must include both land and improvements since, usually, there is no way to apportion consideration between land and improvements.

The increase in the value of urban property in Kimball County brought the sales-assessment ratio for that property to 28.9. This appears to be slightly above the average and the median for all counties as adjusted by the state board.

The county calls attention to the fact that 18 counties with sales-assessment ratios approximately the same or

less than Kimball County were not changed or the valuation was reduced. Attention might also be directed to counties with sales-assessment ratios higher than Kimball County which were not changed or the value increased.

Although the record does not explain why the state board took this particular action, this court should not interfere with the discretion of the board when the discrepancy appears to be slight. Mathematical exactness can never be obtained, and substantial compliance with equality and uniformity is all that is required.

Upon consideration of the entire record, we are unable to say that the action of the State Board of Equalization and Assessment, so far as Kimball County is concerned, was arbitrary and capricious or prejudicial. The order is, therefore, affirmed.

AFFIRMED.

BROWER, J., not participating.

SPENCER, J., dissenting.

I respectfully dissent herein, and incorporate herein by reference the dissent filed in County of Lancaster v. State Board of Equalization & Assessment, *post* p. 497, 143 N. W. 2d 885.

Additionally, I make the following observations. The sales-assessment ratio given by the Tax Commissioner for this county is: Rural - 21.21; urban - 27.01. The rural lands were raised 29 percent, and the urban 7 percent. Evidence was adduced to show that the four sections of land in Kimball County, surrounding state school lands which were revalued last year and which are required to be valued at market value, were in each instance valued at a figure higher than the state school lands.

On the rural sales, evidence was adduced that six of them were incorrect or out of line, and it does not appear that this evidence was considered. Only one of the sales involved was of an operating unit, and that involved an exchange of properties where inflated values

are sometimes used. The portion of the perimeter map showing Cheyenne County, in which no change was made, indicates that the Kimball County land, which is comparable to that across the county line in Cheyenne County, is valued at a higher figure than Cheyenne County land. If Cheyenne County is at actual value, then a gross injustice is being done Kimball County by increasing the inequality.

Some of the urban sales were disputed. One which was used involved the sale of a liquor store with an admitted $10,000 "Blue Sky" for the business. The evidence indicates that Kimball County, at the time of the hearing, had 16 to 19 vacant buildings in a 5-block area. The following comparison of counties in which no change made with an urban sales ratio less than Kimball County's 27.01, clearly demonstrates the arbitrariness of the urban increase:

| COUNTY | SALES RATIO |
|---|---|
| Banner | 25.20 |
| Blaine | 24.68 |
| Boyd | 26.85 |
| Brown | 25.76 |
| Cedar | 25.70 |
| Furnas | 26.96 |
| Garden | 23.72 |
| Hamilton | 25.92 |
| Hayes | 22.77 |
| Kearney | 25.83 |
| Logan | 23.75 |
| Rock | 26.08 |
| Thomas | 22.12 |
| York | 26.71 |

In spite of the fact that each of the counties above had a lower figure than the 27.01 of Kimball County, which received a 7 percent increase, they received none. Cheyenne County, with a 27.09; Garfield County, with a 27.24; and Madison County, with a 27.41, received no in-

crease; and Otoe County, with a 25.61, received a 7 percent decrease.

CARTER, J., joins in this dissent.