IN RE VALUATION AND EQUALIZATION OF REAL ESTATE IN THE STATE OF NEBRASKA FOR 1969.
COUNTY OF SIOUX, NEBRASKA, APPELLANT, V. STATE BOARD OF EQUALIZATION AND ASSESSMENT, APPELLEE.
COUNTY OF BOX BUTTE, NEBRASKA, APPELLANT, V. STATE BOARD OF EQUALIZATION AND ASSESSMENT, APPELLEE.
WESLEY F. HANSEN, COUNTY OF LINCOLN, NEBRASKA, APPELLANT, V. STATE BOARD OF EQUALIZATION AND ASSESSMENT, APPELLEE.
178 N. W. 2d 754

Filed July 17, 1970. Nos. 37414, 37415, 37422.

Wendell E. Mumby, Laurice M. Margheim, and Mc-Grath, North, Nelson, Shkolnick & Dwyer, for appellants.

Clarence A. H. Meyer, Attorney General, and Ralph H. Gillan, for appellee.

Mason, Knudsen, Berkheimer & Endacott, for amicus curiae.

Heard before SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ., and COLWELL and TESAR, District Judges.

SPENCER, J.

This is an appeal from the action of the State Board of Equalization and Assessment ordering increases of assessed valuations of Box Butte, Lincoln, and Sioux Counties. Appellee will be hereinafter referred to as state board.

The order as to Box Butte County provided for an increase of 52 percent for agricultural lands. The order as to Sioux County provided for a 30 percent increase for agricultural lands. Both of these orders state that the increases are ordered in consideration of a 3-year sales assessment ratio, agricultural statistics, Walters' appraisal study, and testimony of the county officials. The order as to Lincoln County provides for an increase of 50 percent for agricultural lands and 17 percent for urban and suburban real estate. As to agricultural land, the order states that it is made in consideration of the 3-year sales assessment ratio, agricultural statistics, and testimony of the county officials. As to the urban and suburban real estate, the order provides it is made in consideration of a 3-year sales assessment ratio and testimony of the county officials.

Previous to the hearings by the state board, the State Tax Commissioner held regional hearings pursuant to Legislative Bills 390 (Laws 1969, c. 653, p. 2569), 391 (Laws 1969, c. 628, p. 2528), and 406 (Laws 1969, c. 654, p. 2571), to gather information for use in the equalization of value among the 93 counties. Without reference to constitutionality, which has been argued strenuously

herein, we state that the State Tax Commissioner can hold only an administrative hearing, and not a discretionary or a quasi-judicial one, because the power of the state board cannot be delegated to the State Tax Commissioner. Because of the result we reach herein, it is not necessary to discuss the constitutionality of the acts or whether the hearings held by the State Tax Commissioner were quasi-judicial ones.

The testimony at the regional hearing as to Box Butte County is in the record pursuant to the request of the attorney representing that county. The testimony from the regional hearings was not available at the time of the state board hearings because it was still being transcribed, so the counties had no opportunity to meet it. It was not offered in evidence as a part of the state board hearings in any event, so, except as to Box Butte County, the evidence adduced at the regional hearings will not be considered herein. We have heretofore determined that the Administrative Procedures Act applies to hearings conducted by the state board. Section 84-914 (3), R. R. S. 1943, of that act, provides: "All evidence including records and documents in the possession of the agency of which it desires to avail itself shall be offered and made a part of the record in the case. No other factual information or evidence shall be considered in the determination of the case. Documentary evidence may be received in the form of copies or excerpts or by incorporation by reference."

For purposes of comparison with regard to whether or not equalization was achieved, we set out the following 3-year sales assessment ratios used by the state board and the action taken by it for the counties involved herein and for surrounding or comparable counties:

| COUNTIES | 3-YEAR SALES ASSESSMENT RATIO | STATE BOARD ACTION |
|---|---|---|
| | BOX BUTTE COUNTY | |
| Box Butte | 19.38 | Increase - 52% |

| | | |
|---|---|---|
| Banner | 21.24 | Increase - None |
| Keith | 23.49 | Increase - None |
| Sioux | 24.11 | Increase - 30% |
| Morrill | 26.60 | Increase - None |
| Cheyenne | 26.90 | Increase - None |

### SIOUX COUNTY

| | | |
|---|---|---|
| Sioux | 24.11 | Increase - 30% |
| Box Butte | 19.38 | Increase - 52% |
| Scotts Bluff | 24.87 | Increase - 15% |
| Morrill | 26.60 | Increase - None |
| Dawes | 29.38 | Increase - None |

### LINCOLN COUNTY

| | | |
|---|---|---|
| Lincoln | 20.25 | Increase - 50% |
| Logan | 18.00 | Increase - 33% |
| Dawson | 19.60 | Increase - 40% |
| McPherson | 20.99 | Increase - 33% |
| Keith | 23.49 | Increase - None |
| Perkins | 23.58 | Increase - 17% |
| Cheyenne | 26.90 | Increase - None |
| Frontier | 27.26 | Increase - None |
| Hayes | 28.19 | Increase - None |

Most of the above counties which received no increase had had a reappraisal within the last 2 years. In some of them, however, this was not the case. The record is void of any explanation of the correlation between the different methods used. One of the experts for the State Tax Commissioner as well as the Governor stated that it was impossible to correlate reappraisals and the sales assessment ratios. We do not accept that premise, but believe that it is possible, with proper analysis and the adoption of uniform rules and procedures, to correlate the various methods used.

The orders in each of the counties involved herein state that agricultural statistics were considered in determining the increase for agricultural lands. An examination of the record discloses a complete absence of any state-federal agricultural statistics. Exhibit 5, denominated "Indicators of Value of Land and Improve-

ments, By Counties in Nebraska," is in evidence. It is a discussion of the method used to determine the value of the land, based upon productivity and other factors. The exhibit, however, does not contain any statistics or any specific values for any county. It is merely a discussion of the method or the process used. The record would indicate that the exhibit, which contained the information on which the state board acted, was a map of the state on which the statistician had entered his estimate of values for the various counties. This map was properly excluded and is not a part of this record. The representative of the State Tax Commissioner's office, who attempted to justify the use of the statistics, testified that the federal agricultural statistician was responsible for the judgment decisions which went into the study. The chief statistician who compiled the report was called as a witness. His testimony would indicate that much of the information is compiled from voluntary unsworn statements and involves many judgment decisions. He was asked if the basic data upon which he based his judgment decisions was available. He stated that the decisions involved a tremendous amount of material, and that he did not have the material with him. There would be absolutely no way in this record to determine the basis on which those decisions were made. Clearly, none of this evidence can be used to sustain the action of the state board. To do so would be a clear violation of the Nebraska Administrative Procedures Act, section 84-914 (3), R. R. S. 1943, set out heretofore.

Mr. R. C. Walters who made several appraisal studies for the State, was asked if the sales assessment ratio is completely inconsistent with an appraisal system. He testified in effect that the sales assessment ratio had no bearing in the estimate he made as an appraiser although he did use a quality analysis and used a procedure comparable to the sales assessment ratio as a check, but he did not use a sales assessment ratio to arrive at his

original conclusion. He was then asked if in his judgment a sales assessment ratio study is valid for equalization purposes. His answer was that he thought it could be refined to the point where it would be, but that as presently used it had a lot of inequities built into it because the system being used is not refined enough. He did think that it could be developed so that it could be used uniformly across the state, but a lot of refinement would need to be made before it could be equitably so used.

We made no attempt to cross-check each of the sales assessment ratios used for the counties herein. We do note, however, that as to the 1968 sales assessment ratio for rural property in Sioux County, which the State calculated to be 23.00, we would arrive at a different figure considering the property involved on an acreage basis. There were three rural sales for that year, involving 1,169 acres, admittedly too few to establish actual value for a county with 1,226,000 acres. The first involved 360 acres; the second, 169 acres; and the third, 640 acres. The sales assessment ratios were respectively 18.32; 22.57; and 37.33. As we calculate the sales assessment ratio on the basis of the acreage involved, we would have a figure of 29.34 rather than 23. It is of interest that the larger parcel was overassessed on the basis of the sale.

The sales used in the sales assessment ratio covered both land and the improvements thereon. It is a matter of common knowledge that good improvements will influence the sale price of land. In the county records, land and improvements are given separate valuations. The increases provided for herein, however, apply only to the land and not to the improvements, which could be a factor in a low sales assessment ratio. It is obvious that this would create a disparity between agricultural lands with improvements and those with no improvements.

The orders in each instance state that consideration

was given to the testimony of county officials. There is nothing in the testimony by the county officials of the counties herein which would even remotely support any of the increases as to agricultural lands. If it refers to the testimony at the regional hearings, except as to Box Butte County, it is not a part of the record. The testimony of Sioux County at the regional hearing is included with the Box Butte County testimony, and if considered would definitely negative any increase for that county. We can act only on the record presented to us, and that record must sustain the action taken by the state board. It is possible, and probably necessary, to use different methods for some of the counties, but the record must show the correlation between the various methods used in the attempt to achieve a reasonable degree of uniformity.

It is the primary duty of the state board to equalize or establish uniformity between the various counties. It is evident from what has been set out heretofore that this has not been done. We realize that absolute uniformity of approach is impossible, but there certainly must be a reasonable attempt at uniformity. As we have said before, the record must sustain the action of the state board, and in the absence of some satisfactory explanation of the divergencies and discrepancies in the application of the different methods used and relied upon, and of a satisfactory explanation of the correlation between the different methods, this court cannot determine if the constitutionally required equalization or uniformity has been attained between counties. See Hanna v. State Board of Equalization & Assessment, 181 Neb. 725, 150 N. W. 2d 878. Where the record of the proceedings before the State Board of Equalization and Assessment contains no evidence to justify an order, the action must be held to be unreasonable or arbitrary. Brandeis Investment Co. v. State Board of Equalization & Assessment, 181 Neb. 750, 150 N. W. 2d 893.

We have not discussed the increase as to urban and

suburban real estate in Lincoln County. That increase was not seriously questioned by the Lincoln County officials. The appeal for Lincoln County was prosecuted by Wesley Hansen, a rural landowner, as to the increase for all property in the county. However, the thrust of the briefs and the argument was as to the increases given the agricultural lands. We see no reason to disturb the order as to the urban and suburban real estate for Lincoln County.

For the reasons given above, we reverse the order of the State Board of Equalization and Assessment increasing the assessment for agricultural lands in each of the counties herein. That part of the order providing an increase for Lincoln County urban and suburban real estate is affirmed.

AFFIRMED IN PART, AND IN PART REVERSED.

WHITE, C. J., and CARTER, J., took no part in the consideration of or decision in these cases.