In re Valuation and Equalization of Real Property in the State of Nebraska for 1966.
Brandeis Investment Company, a corporation, appellant, v. State Board of Equalization and Assessment of the State of Nebraska, appellee.
Ernest F. Lied, appellant, v. State Board of Equalization and Assessment of the State of Nebraska, appellee.
Alan Baer and J. D. Diesing, Trustees of the E. John Brandeis Trust, appellants, v. State Board of Equalization and Assessment of the State of Nebraska, appellee.

150 N. W. 2d 893

Filed May 19, 1967. Nos. 36459, 36460, 36461.

Monsky, Grodinsky, Good & Cohen, for appellants.

Clarence A. H. Meyer, Attorney General, and Homer G. Hamilton, for appellee.

Heard before White, C. J., Spencer, Boslaugh, Smith, McCown, and Newton, JJ., and White, District Judge.

Spencer, J.

This is an appeal by Brandeis Investment Company, a corporation; Ernest F. Lied; and Alan Baer and J. D. Diesing, Trustees of the E. John Brandeis Trust, from an order of the State Board of Equalization and Assess-

ment, hereinafter referred to as State Board, increasing the valuation of industrial and commercial property within incorporated municipalities in Douglas County 24 percent. City of Omaha v. State Board of Equalization & Assessment, *ante* p. 734, 150 N. W. 2d 888, decided today, requires the reversal of this case, and the statements and conclusions therein are included herein by reference. We deem it pertinent, however, to elaborate on other features of the proceedings which further demonstrate the arbitrary and capricious nature of the State Board's order as to Douglas County.

Douglas County reported 14,078 sales to the Tax Commissioner, but the Tax Commissioner in his sales-assessment ratio study did not consider any sale previous to July 21, 1965, when L. B. 918, Laws 1965, chapter 457, section 1, page 1451, amending section 76-214, R. R. S. 1943, became effective. Sales for the entire year of 1965 were considered in all other counties where the sales-assessment ratio study was used. Previous to August 11, 1966, the only sales which had been processed by the Tax Commissioner for Douglas County were 3,977 on which confidential statements had been submitted. Of these, the Tax Commissioner determined that only 763 were bona fide sales, and so advised the county. Douglas County, because of the time factor, was only able to check approximately 200 of them. Douglas County objected to 153 of those which it had been able to check, and 117 of these objections were sustained, with the result that of the 3,977 sales for which confidential statements had been submitted, only 646 were determined to be bona fide sales for the sales-assessment ratio study.

This was the situation on August 10, 1966, when the Tax Commissioner secured 1,346 additional confidential report forms for the last part of 1965 which Douglas County had not been able to process and had not sent to the Tax Commissioner. These were processed by the Tax Commissioner's office in less than 12 hours, and 1,107 were used with the 646 referred to above to deter-

mine the sales-assessment ratio for Douglas County. It is conceded that Douglas County, previous to the hearing, was not told which 1,107 sales were being used, and had no opportunity to review them. Based on the high percentage of rejections on 200 of the previous 763 sales checked by the county, it is patent that some portion of the 1,107 sales would have been discarded if Douglas County had been given the opportunity to process them.

Ignoring the question of due process and the other points which are discussed in City of Omaha v. State Board of Equalization & Assessment, *supra*, it is apparent that at most only sales for the last 5 months of 1965 were reviewed for the sales-assessment ratio study for Douglas County, whereas sales for the entire 12 months were reviewed in all other counties in which the sales-assessment ratio study was used.

In Lancaster County, which like Douglas County would have a large volume of sales, the screening process covered every sale for the 12-month period. There is no satisfactory explanation or correlation in the record for this difference nor is there any showing to indicate that the sales used were representative samples for the entire year. We realize that this is an unusual situation which is not likely to happen again. On this record, however, it is not possible to determine whether or not the procedure followed in Douglas County and in Lancaster County may not have produced an improperly weighted study for intercounty equalization purposes.

The record herein contains no proof of any nature to justify an increase for Douglas County. County of Lancaster v. State Board of Equalization & Assessment, *ante* p. 738, 150 N. W. 2d 886, decided today, is particularly pertinent herein. The State Board is bound by its record, and where the record of the proceedings before the State Board contains no evidence to justify an order, the action must be held unreasonable and arbitrary. The State Board did not see fit to make the 1,107 addi-

tional sales it used to raise its previous sales-assessment ratio study 24 percent a part of this record. The information used by the Tax Commissioner from these sales changes a previous State Board conclusion of a 14 percent decrease to a 24 percent increase. The State Board's case, therefore, depends entirely upon this evidence. Unless we require the record to reflect the pertinent information on which the State Board acted, an appeal herein would be a futile gesture. Without this evidence in the record, a 24 percent increase is no more than an arbitrary conclusion, which cannot be accepted by this tribunal. An administrative record must show some basis on which a finding may be premised.

The Douglas County abstract, unlike those of most other counties, and contrary to the instruction of the Tax Commissioner, listed all urban, residential, commercial, and industrial lands together, and all urban, residential, commercial, and industrial improvements together. The suburban residential lands and improvements, and the suburban industrial lands and improvements, however, were listed separately. This fact was apparent from the abstract, and was brought to the attention of the State Board on several occasions, but no division was considered or ordered. At the conclusion of the hearing, the State Board made a specific finding: "That the sales-assessment ratio for urban and suburban property does not reflect the level of assessment for industrial and commercial property and that the increase or decrease applicable to urban and suburban property should not be applied to industrial and commercial property."

This finding was entirely disregarded by the State Board in Douglas County. The sales-assessment ratio for urban residential was used for urban industrial and commercial property. This resulted in a 24 percent increase on all commercial and industrial lands and improvements within the boundaries of all municipalities in Douglas County. Therefore, commercial and indus-

trial properties within the boundaries of municipalities in Douglas County were assessed 24 percent higher than similar property in Douglas County outside the boundaries of the municipalities as well as similar property throughout the rest of the state. It is obvious that the action of the State Board in this respect produced inequality rather than equality, and must be held to be arbitrary, unreasonable, and capricious.

Appellants' contention that the order of the State Board increasing urban commercial and industrial real property in Douglas County 24 percent was arbitrary, unreasonable, and capricious is sustained, and the order of the State Board of Equalization and Assessment must be reversed as to these appellants.

REVERSED.