THE COUNTY OF DOUGLAS, NEBRASKA, APPELLANT, v. NEBRASKA TAX EQUALIZATION AND REVIEW COMMISSION, APPELLEE.

635 N.W.2d 413

Filed September 21, 2001. No. S-00-529.

James S. Jansen, Douglas County Attorney, and Christine A. Lustgarten for appellant.

Don Stenberg, Attorney General, and L. Jay Bartel for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

Douglas County appeals from an order of the Tax Equalization and Review Commission (TERC) that increased the value of the commercial property in Douglas County by 7 percent.

## SCOPE OF REVIEW

Neb. Rev. Stat. § 77-5019(5) (Cum. Supp. 2000) provides that appellate review of a decision by TERC shall be conducted

for error on the record of TERC. When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Pfizer v. Lancaster Cty. Bd. of Equal.*, 260 Neb. 265, 616 N.W.2d 326 (2000). However, in instances where an appellate court is required to review cases for error appearing on the record, questions of law are reviewed de novo on the record. *Id.*

## FACTS
We first review the procedural steps which preceded this appeal. Pursuant to Neb. Rev. Stat. § 77-1514 (Supp. 1999), the Douglas County assessor timely filed his abstract of assessment for real property for tax year 2000 with the Property Tax Administrator (PTA). On April 5, 2000, the PTA prepared statistical and narrative reports informing TERC of the level of value and the quality of assessment of the classes and subclasses of real property in the state and certified her opinion regarding the level of value and quality of assessment in each county, pursuant to Neb. Rev. Stat. § 77-5027 (Cum. Supp. 2000).

For the 2000 tax year, the statistical reports for the commercial class of property were to be determined by use of sales during the 3-year period from July 1, 1996, through June 30, 1999. However, for Douglas, Lancaster, and Sarpy Counties, the PTA's reports and opinions included calculations based on sales of commercial property using only 1 year's worth of data (July 1, 1998, through June 30, 1999).

Under the Nebraska Administrative Code, TERC is authorized to use several statistical measures, practices, and definitions in the evaluation of assessments. See 442 Neb. Admin. Code, ch. 9, § 007.06 (1999) (version in effect for tax year 2000; currently at § 008.06). The purpose of this evaluation is to determine whether assessments are just, equitable, and legal, as required by state law and professionally accepted mass appraisal methods. *Id.* The assessment-sales ratio is one tool used under professionally accepted mass appraisal methods to measure and evaluate the accuracy and uniformity of assessed values. § 007.06A. The ratio is determined by dividing the assessed value of real property by the sales price of that property expressed in terms of a percent-

age. *Id*. The assessment-sales ratio may also refer to the total assessed value of all real property of a particular class or subclass of property which was sold during a particular timeframe compared to the total sales price of all real property of that class or subclass which was sold during the particular timeframe, again expressed as a percentage. *Id*. The acceptable range for the median assessment-sales ratio for the residential and commercial classes of property is between 92 and 100 percent. See Neb. Rev. Stat. § 77-5023(3) (Cum. Supp. 2000).

The uniformity and proportionality of assessment (or quality of assessment) is measured through the use of the price related differential (PRD) and the coefficient of dispersion (COD). The PRD is used under professionally accepted mass appraisal methods to determine whether properties of differing values are treated uniformly. § 007.06B. The PRD may indicate assessment bias and inequity between lower-valued properties and higher-valued properties. *Id*. More specifically, a PRD that is under 1.00 indicates that higher-valued properties are valued at a higher assessment level than lower-valued properties. *Id*. When the PRD is over 1.00, it indicates lower-valued properties are valued at a higher assessment level than higher-valued properties. *Id*. The acceptable range for the PRD is .98 to 1.03. *Id*.

The COD is also used under professionally accepted mass appraisal methods to measure the uniformity of assessments. § 007.06C. The COD is the average absolute deviation from the median stated as a percentage. *Id*. The COD is calculated by dividing the average absolute deviation by the median assessment-sales ratio and multiplying by 100 to convert the ratio to a percentage. *Id*. For the classes of property at issue in this case, the acceptable range for the COD is 20 percent or less. *Id*.

For Douglas County, the PTA rounded the median assessment-sales ratio for commercial property and reported it to be 90 percent. This calculation was based on a "trimmed profile" that included 464 sales in Douglas County between July 1, 1998, and June 30, 1999. A trimmed profile is a summary of statistical studies provided in the PTA's reports and opinion that utilizes only sales with an assessment-sales ratio between 25 and 200 percent. Accordingly, the reported median assessment-sales ratio of 90 percent was calculated based on the number of sales of

commercial property in Douglas County from July 1, 1998, to June 30, 1999, which had assessment-sales ratios between 25 and 200 percent. Those sales that fell outside the ratio were not considered. The report showed that the PRD was 1.0071, which was within the acceptable range of .98 to 1.03. The report further showed, however, that the COD was 23.17 percent, which was outside the acceptable range of 0 to 20 percent.

In an attempt to "make Douglas County comparable with other counties," the PTA applied a 4-percent increase to the reported median assessment-sales ratio of 90 percent, "which represent[ed] a twelve month adjustment to the midpoint of the time frame established by the Nebraska Tax Equalization and Review Commission in Title 442, Neb[.] Administrative Code, Chapter 9, Section 007 for commercial/industrial real property." The median assessment-sales ratio of 90 percent was adjusted to 94 percent, although the COD and PRD remained the same. The PTA opined that adjusting the median assessment-sales ratio of 90 percent to 94 percent brought the existing commercial values in Douglas County within the statutorily acceptable range of 92 to 100 percent, but the quality of assessment was not acceptable because the reported 23.17 percent COD was above the acceptable range of 0 to 20 percent.

On April 18, 2000, TERC commenced its equalization proceedings, receiving into evidence the PTA's reports and opinions for tax year 2000 for all 93 counties in Nebraska, including Douglas County. TERC adopted a motion to use a trimmed profile as the basis for its review of the level of uniformity and proportionality of assessment practices within the 93 counties.

TERC sought the assistance of an expert witness to evaluate the PTA's reports and opinion for Douglas County. TERC retained John Bredemeyer, a licensed certified general real estate appraiser and the chair of the Nebraska Real Estate Appraiser Board, as its expert regarding the validity of certain adjustments made by the PTA in her reports and opinion for Douglas County. Bredemeyer testified that the methodology used by the PTA on the commercial property in Douglas County was not consistent with professionally accepted mass appraisal standards and that the mathematical calculation used by the PTA was not appropriate.

Relying upon Bredemeyer's opinion, TERC concluded that there was no credible evidence to support the PTA's 4-percent time adjustment of the median assessment-sales ratio from 90 percent to 94 percent. TERC found that the COD was outside the statutorily acceptable range of 0 to 20 percent, although the PRD was within the statutorily acceptable range of .98 to 1.03. The level and quality of assessments within Douglas County for tax year 2000 for the commercial property were determined to be unjust and inequitable.

TERC concluded that an order directing the PTA to adjust commercial property values was necessary to ensure compliance with the uniformity and proportionality provisions of article VIII, § 1, of the Nebraska Constitution and § 77-5023. TERC issued an order directing Douglas County to show cause why the value of the commercial property in Douglas County should not be increased by 7 percent, which would in effect raise the reported median assessment-sales ratio of 90 percent to 96 percent, the midpoint of the range required by § 77-5023(2).

At the hearing on the show cause order, Roger Morrissey, who had assumed the duties of Douglas County assessor on January 7, 1999, testified that the 4-percent time adjustment made by the PTA to bring the median assessment-sales ratio to 94 percent was "warranted." However, Morrissey was unable to cite any authority for making a time adjustment to the assessment-sales ratio or to any figure other than the sales price.

Morrissey stated that in an appreciating real estate market, applying a time adjustment to an individual sale causes the assessment-sales ratio to decrease. He described the real estate market for commercial property in Douglas County as "strong" and "increasing."

Morrissey stated that the PTA's report indicated a median assessment-sales ratio of 94 percent for the period of July 1 to September 30, 1998, and 93.18 percent for the period of October 1 to December 31, 1998. In the following two quarters, after Morrissey had taken office, the reported median assessment-sales ratio was 84.12 percent for January 1 to March 31, 1999, and 80.20 percent for April 1 to June 30, 1999. Morrissey admitted that the level of assessment for those two quarters was considerably lower than previous quarters.

Douglas County offered the testimony of Len Buckwalter, the chief field deputy in the Douglas County assessor's office, who stated that he found 76 errors on the sales roster for Douglas County that had to be corrected. Based on his corrections, Buckwalter calculated a median assessment-sales ratio of 91.81 percent. He stated that this number would normally be rounded to 92 percent, thus falling within the acceptable statutory range. He also believed that a time adjustment should be applied to that figure, since it was based upon a 1-year sales roster, rather than the 3-year sales roster used to analyze most other counties.

The PTA prepared additional statistical reports reflecting the corrections submitted by Buckwalter. The amended trimmed profile, based on sales from July 1, 1998, to June 30, 1999, showed a median assessment-sales ratio of 90.48 percent, which the PTA rounded to 90 percent. The PTA then applied a 4-percent time adjustment to this number and arrived at a median assessment-sales ratio of 94 percent. Buckwalter stated that in professionally accepted mass appraisal practice, time adjustments should be made to the sales price, although he indicated that applying a percentage time adjustment to the assessment-sales ratio appeared to be appropriate.

Buckwalter opined that Douglas County was in a "boom market," that the commercial real estate market was strong, and that commercial values within the county were "appreciating." He estimated that the value of commercial property in Douglas County was increasing at a rate of 4 percent per year.

Buckwalter noted that the PTA's 1999 reports and opinion for Douglas County indicated a "flat" market. The reports showed that the commercial real estate market from July 1, 1996, to June 30, 1998, reflected a consistent median assessment-sales ratio at or near 94 percent. Only one quarter during this period, October 1 to December 31, 1997, varied. It registered a median assessment-sales ratio of 90.45 percent.

According to Buckwalter, "sales chasing" could account for the discrepancy between his testimony that the commercial real estate market in Douglas County was increasing at a rate of 4 percent per year and the evidence from the PTA's 1999 reports and opinion for Douglas County, which showed that the commercial real estate market was flat. Buckwalter acknowledged

that "sales chasing," at least until the end of 1998, provided a "logical hypothesis" and the "most probable scenario." "Sales chasing," also known as selective reappraisal, is the practice of selectively changing values for properties that have been sold, while leaving other values alone. The issue of "sales chasing" will be discussed in more detail later in this opinion.

The PTA explained that during the process of collecting data for tax year 2000, her office realized that it would be "extraordinarily difficult" to maintain full 2- and 3-year databases for the largest counties in the state. In an effort to more efficiently and expeditiously handle the process, only 1 year's worth of data was used for the PTA's 2000 statistical and narrative reports for Douglas, Lancaster, and Sarpy Counties. The PTA explained that in order to ensure uniform and proportionate treatment of the classes of property in all counties, her office "reviewed and developed a measure — a statistical adjustment to trend backwards in time the one year's worth of sales information to a — to a comparable three-year time frame to attempt to ensure a uniform and proportionate treatment of the classes of property by county." This resulted in the 4-percent time adjustment made to those median assessment-sales ratios that were based upon only 1 year's worth of sales.

The PTA confirmed that Buckwalter's corrections had been incorporated into the sales data and that the statistical reports for commercial property had been rerun. The PTA opined that a time adjustment to the results of the report that used only 1 year's worth of sales "would be appropriate."

The PTA testified that applying a 4-percent time adjustment decrease to individual sales of commercial property in Douglas County during the period of July 1, 1998, to June 30, 1999, resulted in a median assessment-sales ratio of 93.9829 percent. A recalculation of the median assessment-sales ratio based on 1 year's sales adjusted by 4 percent on a monthly basis showed a median assessment-sales ratio of 93.8763 percent. The PTA noted that the calculations of the COD and PRD were not correct on the statistical reports containing the recalculations.

On May 10, 2000, TERC filed its "Findings and Orders Adjusting Values." TERC rejected the PTA's 4-percent time adjustment to the median assessment-sales ratio because none

of the standard reference works identified this adjustment as a professionally accepted mass appraisal method. TERC concluded that the PTA's 4-percent time adjustment to the median assessment-sales ratio was not recognized, reliable, or credible.

TERC found that for the 3-year period of July 1, 1995, to June 30, 1998, the profile for commercial property based on the quarterly assessment-sales ratio studies indicated a flat real estate market, while the uncontroverted testimony established that the commercial real estate market in Douglas County was strong. TERC concluded that the adjustments which resulted in a profile indicating a flat commercial real estate market demonstrated a clear intent to circumvent the uniformity and proportionality provisions of article VIII, § 1, of the Nebraska Constitution. TERC noted that when adjustments were made only to sold commercial properties, an undervaluation of commercial property resulted, which impermissibly shifted the tax burden in Douglas County to residential property. The trimmed profile for commercial property in Douglas County indicated a 14-percent decrease in the median assessment-sales ratio between the last quarter of 1998 and the first two quarters of 1999.

Based upon the undisputed fact that the commercial real estate market in Douglas County was increasing, TERC found that the assessment-sales ratios for periods prior to the second quarter of 1999 were not representative of the level and quality of assessment for commercial property in the county and were the result of "sales chasing." TERC concluded that the median assessment-sales ratio for the 1-year study period which was not tainted by "sales chasing" was 80.20 percent. TERC found the statistical profile showing 1 year of trimmed sales incorporating corrections to the sales roster by Douglas County, which included 6 months of sales data from 1998 that were affected by "sales chasing," to be "the most representative of the level of assessment of the commercial class of property within the County, since it incorporate[d] all corrections to the Sales Roster requested by the County and implemented by the Property Tax Administrator."

TERC found that a time adjustment was not required to equalize Douglas County with the other counties in the state even though Douglas County values were analyzed based on 1

year's worth of sales. The median assessment-sales ratio for Douglas County had been artificially inflated by at least 14 percent due to "sales chasing" prior to January 1999, and this 14-percent inflation factor compensated for the 4-percent increase in the commercial real estate market testified to by experts.

TERC concluded that a just and equitable assessment of the commercial property in Douglas County could not be made without increasing the value of property by a percentage. TERC ordered an increase of 7 percent in the assessed value of the commercial property in Douglas County. This 7-percent adjustment was to be applied to all commercial and industrial real property in Douglas County, including both land and improvements. TERC found that this increase would bring the median assessment-sales ratio to 96 percent, the midpoint of the acceptable range required by § 77-5023. On May 22, 2000, Douglas County filed an appeal with the Nebraska Court of Appeals, and we granted Douglas County's petition to bypass.

## ASSIGNMENTS OF ERROR

Douglas County asserts (1) that TERC's findings with respect to Douglas County were arbitrary, unsupported by the evidence before TERC, and not in conformity with the law; (2) that TERC's actions violated the uniformity clause of the Nebraska Constitution; (3) that TERC's actions violated the concept of separation of powers guaranteed by the Nebraska Constitution; and (4) that TERC's actions violated the Due Process Clause of the Nebraska Constitution.

## ANALYSIS

TERC is empowered to "review and equalize assessments of property for taxation within the state." See Neb. Const. art. IV, § 28. Specifically, TERC is required to "annually equalize the values of all real property as submitted by the county assessors on the abstracts of assessments and equalize the values of real property which is valued by the state." Neb. Rev. Stat. § 77-5022 (Cum. Supp. 2000). TERC fulfills this requirement by determining whether it is necessary to "increase or decrease the value of a class or subclass of real property of any county or tax district . . . so that all classes or subclasses of real property in all

counties fall within the acceptable range." See § 77-5023(1). For nonagricultural real property, the acceptable range is from 92 to 100 percent of actual value. § 77-5023(3). Any increase or decrease is made by a percentage which results in an average level of assessment for the class or subclass adjusted at 96 percent of actual value. § 77-5023(2).

The PTA is required to prepare reports and opinions concerning the level of value and the quality of assessment of the classes and subclasses in each county on or before April 5 of each year. § 77-5027. According to § 77-5027, "[TERC] shall, pursuant to section 77-5026, raise or lower the valuation of any class or subclass of property in a county when it is necessary to achieve equalization." Neb. Rev. Stat. § 77-5026 (Cum. Supp. 2000) provides:

[I]f [TERC] finds that a just, equitable, and legal assessment of the property in the state cannot be made without increasing or decreasing by a percentage the value of a class or subclass of property as returned by any county, the commission shall issue a notice to the counties which it deems either undervalued or overvalued and shall set a date for hearing . . . . At the hearing the legal representatives of the county may appear and show cause why the value of a class or subclass of the property of the county should not be adjusted. At the hearing, [TERC] may receive testimony from any interested person.

State law also provides that "[a]ny party aggrieved by a final decision in a case appealed to [TERC] and any county or other political subdivision aggrieved by an order of [TERC] issued pursuant to section 77-1504.01 or 77-5028 shall be entitled to judicial review in the Court of Appeals." § 77-5019(1).

Prior to the creation of TERC, the State Board of Equalization and Assessment (Board) was responsible for equalizing the values of all real property located in the state. See Neb. Rev. Stat. § 77-505 (Reissue 1996). See, also, *Hall County v. State Bd. of Equal.*, 250 Neb. 323, 549 N.W.2d 164 (1996). In *Hall County*, 250 Neb. at 330-31, 549 N.W.2d at 170, we stated that the Board "has a wide latitude of judgment and discretion in equalizing the assessment of property. . . . '"[T]he presumption is that the Board faithfully performed its duties and the burden is upon the

appellant to prove that the action of the Board was erroneous, arbitrary, capricious, and contrary to the law." ' "

■ Since TERC performs essentially the same functions that were performed by the Board, we will consider such appeals under the same standards and principles that we applied to appeals from equalization proceedings before the Board. See *id.* It is presumed that TERC faithfully performed its duties, and the burden is upon Douglas County to prove that TERC's actions were erroneous, arbitrary, capricious, and contrary to law. Our review of the appeal is the same. Appellate review of a TERC decision shall be conducted for error on the record of TERC. See § 77-5019(5). When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Pfizer v. Lancaster Cty. Bd. of Equal.,* 260 Neb. 265, 616 N.W.2d 326 (2000). However, in instances where an appellate court is required to review cases for error appearing on the record, questions of law are reviewed de novo on the record. *Id.* We now consider each of Douglas County's assigned errors.

TERC's FINDINGS

Douglas County argues that TERC's findings were arbitrary, unsupported by the evidence, and not in conformity with the law in several respects. Douglas County first claims that TERC acted in an arbitrary fashion by accepting a time adjustment to the residential property in Douglas County, but not to the commercial property.

Our review of the record indicates that TERC accepted the median level of value for residential property in Douglas County without any type of time adjustment. In its argument, Douglas County refers to a statistical adjustment in which the PTA stated that the median ratio for residential property was 92.8 percent, which would be adjusted for time by 2 percent to 94.68 percent. However, we find that the actual statistics using the trimmed profile show that the median value was 95 percent. Thus, TERC did not accept the PTA's statistical adjustment to the residential class of property. The analysis of the statistical reports states:

> The calculated median ratio was rounded to and reported at 95%, indicating the level of value of the residential real property to be within the range of 92-100%. . . . Now referring to the "Statistical Adjustment" page the median level of value is at 97 indicating the level of value of residential real property to be within the range of 92-100%.

Regardless of the interpretation of the statistical analysis or the statistics, we do not find that TERC's actions were arbitrary. Even without a time adjustment, the median value of real property was within the acceptable range of 92 to 100 percent, and TERC correctly concluded that it was not necessary to order a percentage adjustment to the residential property in Douglas County.

Douglas County next argues that TERC lacked sufficient evidence to issue the order to show cause. Pursuant to § 77-5023, TERC is given the authority to issue an order to show cause why the value of a class of property should not be adjusted. See § 77-5026. In considering the show cause order, TERC relied upon Bredemeyer's expert testimony that the 4-percent time adjustment that the PTA applied to the median assessment-sales ratio for commercial property in Douglas County was not consistent with a professionally accepted mass appraisal standard. Without the application of the PTA's 4-percent time adjustment, the median assessment-sales ratio for commercial property was 90 percent, which was outside the statutorily acceptable range of value required by § 77-5023.

Sufficient evidence was presented to support TERC's actions, and TERC did not act arbitrarily in issuing the show cause order to Douglas County. This argument is without merit.

Douglas County also objects to TERC's findings in its May 10, 2000, order as arbitrary, unsupported by the evidence, and not in conformity with the law. The county claims that a number of analyses could have been used by TERC which showed that the median level of value for commercial property in Douglas County was within the statutorily acceptable range. Instead, the county argues, TERC based its findings on the unsupported theory that "sales chasing" had occurred prior to January 1999.

Among the analyses that TERC allegedly ignored was Buckwalter's recalculation after he corrected 76 errors in the sales roster. The new median for commercial property in

Douglas County was 91.81 percent, which Buckwalter stated would normally be rounded to 92 percent and would fall within the statutorily acceptable range.

In addition, the PTA recertified her statistical report for commercial property in Douglas County on May 9, 2000, showing a median of 90.48 percent, which was rounded to 90 percent. The PTA then applied a 4-percent time adjustment and arrived at a median of 94 percent, which she asserted was within the statutorily acceptable range. Another analysis by the PTA, using Buckwalter's corrections and 3 years' worth of sales from July 1, 1996, to June 30, 1999, resulted in a median of 97.67 percent, which was rounded to 98 percent. No time adjustment was made to this figure because it was based on 3 years' worth of sales. According to the PTA, analyses purporting to apply a 4-percent time adjustment to individual sales of commercial property in Douglas County during the period of July 1, 1998, to June 30, 1999, resulted in a median of 93.9829 percent. A recalculation of the median based on adjusting sales by 4 percent on a monthly basis resulted in a median of 93.8763 percent.

Douglas County argues that these analyses were competent to demonstrate that TERC should not adjust the commercial property values by 7 percent. The county asserts that even though TERC, the PTA, and the county's own witness all agreed that "sales chasing" could be evidenced, it was not conclusively shown by a comparison between the percent in sales base value to the percent change in assessed base value.

TERC claims that the analyses were unreliable because the data used included sales information from periods during which the prior Douglas County assessor engaged in the unacceptable assessment practice of "sales chasing." As noted earlier, "sales chasing" occurs when values for properties that have been sold are changed while values for unsold properties remain constant. The practice is unprofessional because it creates inequities between properties and, unless adjusted for, renders sales ratio studies invalid. This is important because

> [t]he objective of ratio studies is to determine appraisal performance for the population of properties, that is, both sold and unsold parcels. As long as standardized schedules and formulas are used in the valuation process, there

is little reason to expect any significant difference in appraisal performance between sold and unsold parcels. If, however, sold parcels are selectively reappraised based on their sales prices or other criterion, the appraised values used in ratio studies will not be representative and ratio statistics will be distorted.

International Association of Assessing Officers, Mass Appraisal of Real Property 309 (1999).

In addition,

[i]f sold and unsold parcels are similarly appraised, they should experience similar changes in value over time. Accordingly, it is possible to compute the average change in value over a selected period for sold and unsold parcels and, if necessary, test to determine whether observed differences are significant. If, for example, values for vacant sold parcels in an area have increased by 45 percent since the previous reappraisal, but values for vacant unsold parcels have increased only 10 percent, clearly sold and unsold parcels have not been equally appraised.

*Id.* at 311.

TERC argues that evidence of "sales chasing" is shown in the assessment-sales ratio data contained in the profile prepared by the PTA. This data reflected a marked decrease in the assessment-sales ratio for commercial property in Douglas County between the last two quarters of 1998 (94 and 93.18 percent) and the first two quarters of 1999 (84.12 and 80.20 percent), with a net drop in the median of 14 percent in 6 months. TERC asserts that the practice of "sales chasing" tainted the sales data prior to January 1, 1999.

We are required to review decisions by TERC for error on the record. Therefore, our inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. See *Pfizer v. Lancaster Cty. Bd. of Equal.*, 260 Neb. 265, 616 N.W.2d 326 (2000). In this review, TERC is entitled to the presumption that it faithfully performed its duties, and the burden is upon Douglas County to prove that the action of TERC was erroneous. See *Hall County v. State Bd. of Equal.*, 250 Neb. 323, 549 N.W.2d 164 (1996).

The quarterly assessment-sales ratio studies in the profile for commercial property offered by Douglas County showed that a flat real estate market existed in Douglas County for the 3 years between July 1, 1995, and June 30, 1998. However, the evidence is undisputed that the commercial real estate market in Douglas County was strong and increasing at a rate of 4 percent per year. As TERC noted, under these circumstances, the quarterly assessment-sales ratios listed in the profile should have decreased. No witness provided any explanation for the dramatic change in the median after the former assessor left office in January 1999, and Douglas County presented no evidence to explain the inconsistency.

As sale prices increase in a strong market and assessment values lag behind, the assessment-sales ratio should decrease. For example, if a property is assessed at $90,000 and is sold for $100,000, the assessment-sales ratio is 90 percent. If the assessed value of this property remained at $90,000 and at a later date the property sold for $110,000, the assessment-sales ratio would decrease to 81.82 percent. The 1999 percent change report for Douglas County showed that for commercial property, the 1998 to 1999 increase in sales base value was 21.33 percent. However, the 1998 to 1999 increase in assessed base value was only 3.98 percent. Contrary to Douglas County's argument, these figures were relevant to the determination of whether "sales chasing" had occurred during this time period.

"Sales chasing" was demonstrated by the 14-percent decrease in the median level of assessment between the last quarter of 1998, when the prior assessor was in office, and the first two quarters of 1999, when Morrissey took office, based on the trimmed profile for commercial property. As TERC found, this 14-percent change was not representative of changes in the commercial real estate market during this period when the real estate market was strong. If the sales utilized by Douglas County in the ratio studies were representative of the entire commercial real estate market, the market in Douglas County, after remaining stagnant for 2½ years, changed more than 14 percent in 6 months. Douglas County did not provide any evidence to explain the dramatic change in the median assessment-sales ratio after the former assessor left office in January 1999.

Buckwalter, Douglas County's expert witness, testified that the assessment rolls and the property record cards showed a flat real estate market in Douglas County for 3 years, although the real estate market had been increasing 4 percent per year. This supports a finding that "sales chasing" had occurred in Douglas County at least until the end of 1998.

TERC also found that the median assessment-sales ratio for the study period which was not tainted by "sales chasing" was 80.20 percent for the second quarter of 1999, or April 1 to June 30. Therefore, TERC determined that as a result of "sales chasing" by the previous administration in the Douglas County assessor's office, commercial property in Douglas County was and continues to be undervalued.

We conclude that TERC's determination that "sales chasing" had occurred in Douglas County during this time period was supported by competent evidence. TERC's findings with respect to "sales chasing" were neither arbitrary, capricious, nor unreasonable.

TERC's finding that a time adjustment was not necessary in order to equalize Douglas County with other counties is also supported by the record. According to § 007.08 of the Nebraska Administrative Code then in effect (currently at § 008.08), "[TERC] will give consideration to the methodology used by the counties in determining time adjustments and to the impact time adjustments may have on the overall statistical analysis results." The PTA's determination to apply a 4-percent increase to the reported median assessment-sales ratio of 90 percent is not supported by the Nebraska Administrative Code or the evidence.

Section 007.08A provides: " 'Time adjustments' are changes made to the sales price of real property sold during a particular time frame in order to account for inflationary or deflationary changes in market value. These changes impact the assessment/sales ratio, and also the PRD and COD." Section 007.08B requires the assessing body to justify its time adjustment practices based on evidence. The PTA adjusted the assessment-sales ratio by 4 percent with no justification. Bredemeyer, TERC's expert witness, testified that it was not appropriate to adjust the median assessment-sales ratio. Therefore, the evidence

supported TERC's determination that the 4-percent time adjustment applied by the PTA was inappropriate.

Douglas County also argues that it was improper for TERC to draw any conclusions that were inconsistent with its prior findings and orders regarding previous years' equalization proceedings because such determinations were res judicata. Douglas County claims that any findings made or relied upon in the 2000 order that were inconsistent with TERC's 1999 order must be stricken. According to the county, if TERC was concerned that the 1999 values reflected "sales chasing," the concerns could have been addressed during the 1999 equalization proceedings.

TERC argues that res judicata is not applicable in matters involving different tax years. TERC further asserts that it was required to address different issues with respect to the 2000 equalization proceedings, namely the propriety of the PTA's time adjustment, and was presented with new evidence establishing the unreliability of the sales data for the prior periods.

The record shows that Douglas County did not adjust the commercial property values in 1999. TERC's 1999 order was based upon the PTA's 1999 reports for the county, which showed a median value of 94 percent for commercial property. Therefore, the values were not considered previously.

■ In *County of Douglas v. OEA Senior Citizens, Inc.*, 172 Neb. 696, 111 N.W.2d 719 (1961), we concluded that an adjudication that property is exempt from taxation in any 1 year is not res judicata on the question of whether the property is exempt in any succeeding year. Applying the same rationale, TERC is not barred from using past sales data found in certified PTA reports to make adjustments in a later tax year. Thus, TERC was not precluded from using such evidence to determine that the statistical analysis by Douglas County was not reliable.

### UNIFORMITY CLAUSE

Douglas County argues that TERC violated the uniformity clause of the Nebraska Constitution by failing to treat Douglas County in a manner that was uniform with other counties within the state. In particular, the county asserts that it was improper to analyze Douglas County on 2 quarters, or one-half of 1 year, while analyzing the rest of the counties using a 3-year timeframe.

Douglas County relies on *Brandeis Inv. Co. v. State Board of Equalization & Assessment*, 181 Neb. 750, 150 N.W.2d 893 (1967). There, in an appeal from an order of the Board, the valuation of industrial and commercial property in Douglas County was increased by 24 percent. Sales for the entire 1965 tax year were considered in all counties using the sales-assessment ratio except for Douglas County, which considered sales for approximately the last 5 months of 1965. We held that there was no satisfactory explanation for the difference in procedure and no showing that the sales used were representative samples for the entire year. Thus, the order of the Board was determined to be arbitrary, unreasonable, and capricious.

In this case, Douglas County contends that it was treated differently than Lancaster County, which was permitted to provide 3 years' worth of sales information. However, the record shows that the PTA's reports and opinions for both Douglas and Lancaster Counties used only 1 year's worth of sales data.

 The uniformity clause of the Nebraska Constitution, article VIII, § 1, provides in part: "Taxes shall be levied by valuation uniformly and proportionately upon all real property and franchises as defined by the Legislature except as otherwise provided in or permitted by this Constitution." "[W]hile absolute uniformity of approach for taxation may not be possible, there must be a reasonable attempt at uniformity." *Constructors, Inc. v. Cass Cty. Bd. of Equal.*, 258 Neb. 866, 873, 606 N.W.2d 786, 792 (2000). The object of the uniformity clause is accomplished " 'if all of the property within the taxing jurisdiction is assessed and taxed at a uniform standard of value.' " *Id.* No difference in the method of determining the valuation or rate of tax to be imposed can be allowed unless "separate classifications rest on some reason of public policy or some substantial difference of situation or circumstance that would naturally suggest justice or expediency of diverse legislation with respect to the objects to be classified." *Id.* at 874, 606 N.W.2d at 793.

We therefore examine whether there is a substantial difference of situation or circumstance or some public policy reason that would justify why Douglas County was not evaluated using a 3-year timeframe as were other counties within the state.

TERC argues that the different timeframe was justified by the evidence of "sales chasing." In contrast to *Brandeis Inv. Co.* and *Constructors, Inc.*, where there was no substantial explanation to support the differential treatment, the record in the case at bar contains substantial evidence that "sales chasing" had occurred in Douglas County and that the "sales chasing" affected the 3-year sales information. The data for Lancaster County did not indicate that the sales information for Lancaster County was contaminated by the type of "sales chasing" that had occurred in Douglas County. Therefore, we conclude that the evidence of "sales chasing" justified the differential treatment accorded to Douglas County.

Upon finding that the data for the periods prior to 1999 was inaccurate because of the prior Douglas County assessor's "sales chasing," TERC was required to determine a valid median assessment-sales ratio for the commercial property in the county. The International Association of Assessing Officers, Standard on Ratio Studies 31 (1999), provides:

> Once it is determined that "sales chasing" probably has occurred and probably is reducing the validity of ratio study statistical measures of level or uniformity, it is necessary to redo the ratio study to establish valid measures before any other recommendations, such as reappraisal or equalization action, can be made. If feasible, probably the best approach is to select a sample period that effectively precludes sales chasing.

In an attempt to follow this procedure, TERC used the values for commercial property reported in the PTA's amended statistical adjustment. Half of the sales studies were from the last 6 months of 1998, and half were from the first 6 months of 1999. In spite of the fact that the 1998 sales were affected by "sales chasing," TERC determined that the amended statistical adjustment was the most representative of the level of assessment of commercial property within Douglas County, since it incorporated all corrections to the sales roster requested by Douglas County and implemented by the PTA. No evidence was presented of "sales chasing" in other counties.

Professionally accepted mass appraisal techniques permit the use of only 1 year of sales to measure the level of assessment in

counties where a large number of sales are available for review. In Douglas County, there were more than 400 qualified sales for the period in question. Based upon the factual situation presented, we cannot say that TERC erred in using only 1 year of sales data to evaluate the level of assessment of the commercial property in Douglas County. We conclude this assignment of error is without merit.

### REMAINING ASSIGNMENTS OF ERROR
We have considered the remaining assignments of error, and we conclude they are without merit.

### CONCLUSION
For the reasons set forth herein, we affirm TERC's order, as it conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

AFFIRMED.